UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JON BRENT TURPIN and LINDA BECKER TURPIN, Individually and as Parents and Next Friends of J.F.T, their son a minor, Plaintiffs, | ) ) ) ) ) | |
| vs. | ) ) | 1:07-cv-1205-LJM-WGH |
| AMY S. GOOD and JOHN DOE (parents of their minor son, J.D.) and WESTERN WAYNE SCHOOL CORPORATION Defendants. | ) ) ) ) ) | |

**<u>ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

This matter comes before the Court on defendant's, Western Wayne School Corporation ("Western Wayne"), Motion for Partial Summary Judgment. Plaintiffs, Jon Brent Turpin and Linda Becker Turpin (collectively, the "Turpins"), filed this lawsuit individually and on behalf of their son J.F.T. ("JT"). The Turpins contend that JT was subjected to verbal and physical abuse in Western Wayne Schools stemming from sexual orientation discrimination. The Turpins bring three federal claims in this suit, one based on Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681-88 and the other two based on 42 U.S.C. § 1983 predicated on violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The Turpins also bring a negligence claim under state law against Western Wayne. The Turpins make additional state law claims against the parents of one of JT's alleged abusers. Western Wayne argues that it is entitled to summary judgment on the Turpins' Title IX and § 1983 claims. Western Wayne does not seek summary judgment on the negligence claim but requests that the

Court retain jurisdiction over it in the event that the Court disposes of the federal claims. For the following reasons the Court concludes that Western Wayne's Motion for Partial Summary Judgment is **GRANTED**.

## I. BACKGROUND

The Turpin's son, JT, attended Western Wayne schools for most of his pre-college educational career. During his attendance he was subjected by other students to several incidents of physical and verbal harassment. Prior to Western Wayne's summary judgment filing, the Turpins claimed in both their Complaint and their discovery responses that the harassment JT endured stemmed from the perception his classmates had of his sexual orientation. Compl. ¶ 24; Def.'s Ex. 5, at 3 (Pls.' Resp. to Interrog. 4); JT's Dep. at 35. After Western Wayne's summary judgment filing, the Turpins filed several affidavits and amended their deposition responses to indicate that JT was the subject of harassment because he did not fit the gender stereotypes held by his classmates. *See* Pls.' Ex. 1 ¶¶ 2-3; 2 ¶ 4; 4 ¶ 5; 5 ¶ 6; 12.

The parties agree that JT endured several abusive incidents, but they disagree as to the specific details of some of them. Def.'s Ex. 5 (Pls.' Resp. to Interrogs. 5, 6); Def.'s Br., at 8-9. The parties primarily dispute how Western Wayne responded to the harassment. Western Wayne asserts that it was difficult to address the harassment systemically because JT was harassed by so many different students. Def.'s Ex. 1 ¶ 8. Western Wayne, however, contends that it addressed the individual students involved in discrete incidents and, further, it contends that once the school handled a student's

2

inappropriate behavior individually, the student did not typically re-offend. *Id.* Western Wayne further asserts that it provided JT with a variety of accommodations, including a faculty escort in the hallways, allowing him to leave class five minutes early, and requiring teachers to monitor the hallways that JT frequently passed through in order to help him avoid harassment. *Id.* at ¶ 7. The Turpins insinuate that JT's abusers were never actually punished. Pls.' Ex. 1 ¶ 6. The Turpins further claim that any accommodations Western Wayne provided JT for his safety were not well executed and not effective. Pls.' Ex. 1 ¶ 11. After reducing his course work at Western Wayne and taking many of his classes at a vocational center, JT eventually graduated.

## II. **STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials

which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one

on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

The Turpins make federal claims for relief under two separate statutes. First, they claim that JT was discriminated against solely on the basis of his sex in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681-88. Second, the Turpins claim damages under § 1983 predicated on alleged violations of JT's Due Process and Equal Protection rights. The Court will address each of the Turpins' statutory claims in turn.

### A. THE TURPINS' TITLE IX CLAIM

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program or activity. " 20 U.S.C. § 1681(a). "Although the only remedy expressly authorized by the statute is the termination of the recipient's federal funding, the Supreme Court has held that Title IX contains an implied private right of action for money damages." *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507 (7th Cir. 2010). When the Supreme Court determined that Title IX's prohibition against discrimination was implicated in cases involving sexual harassment, it relied on a case decided under Title VII of the Civil Rights Act of 1964. *See Frankilin v. Gwinnett County Public Schools*, 503 U.S. 60, 75 (1992) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)). Since then, federal courts have used Title VII precedents to inform their

5

analyses of sexual harassment and discrimination claims under Title IX. *See, e.g.*, *Doe v. Univ. of Ill.*, 138 F.3d 653 (7th Cir. 1998), *vacated on other grounds*, *Bd. of Trustees v. Doe*, 526 U.S. 1142.   The Seventh Circuit has consistently held that discrimination based on one's sexual orientation or perceived sexual orientation is not actionable in the Title VII context. *See Howell v. N. Cent. College*, 320 F. Supp. 2d 717, 722 (N.D. Ill. 2004) (collecting cases). The court has drawn a line between harassment based on the plaintiff's sex as a result of gender stereotyping and harassment motivated by a plaintiff's sexual orientation. *See Hamm v. Weyauwega Milk Prods.*, 332 F.3d 1058, 1062 (7th Cir. 2003). The former is actionable while the latter is not. *Id.*

Western Wayne claims that it is entitled to summary judgment on the Turpins' Title IX claim because it is based on harassment stemming from JT's sexual orientation. Initially, the Turpins premised their claim entirely on the notion that the harassment that JT endured was motivated by his classmates' perception of his sexual orientation. Their position did not change until about a month after Western Wayne filed its Motion for Summary Judgment and supporting briefing. *See* Dkt. No. 119 (containing affidavits and deposition errata sheets dated from March 27, 2010, to March 29, 2010, and filed on March 29, 2010). Then, the Turpins filed affidavits and amended their deposition testimony to reflect a new theory that JT was subject to harassment because he did not fit into the definition of a stereotypical male held by his peers. Pls.' Ex. 4 ¶ 5.

Along with their own affidavits, the Turpins filed an affidavit of a previously undisclosed witness, Troy Davis, to support their theory that JT was discriminated against based on his failure to fit into a gender stereotype. Western Wayne argues that the Davis affidavit should not be considered on summary judgment due to the Turpins' failure to

disclose Davis as a witness according to Rule 26(a). Rule 37(c)(1) of the Federal Rules of Civil Procedure states that a party's failure to provide information or identity of a witness pursuant to Rule 26(a) prevents the party from using that information or witness to supply evidence on a motion unless the failure was substantially justified or harmless. In the instant case, neither are true. The Turpins put forth no evidence to show why Troy Davis was not disclosed as a witness until well past the deadline. The closest that they get is in Davis' affidavit where he claims a "change of heart" regarding JT. As a result, he decided to come forward just after Western Wayne filed its Motion for Summary Judgment indicating that the legal theory on which the Turpins were proceeding was unsound. Likewise, the late disclosure was not harmless. It prevented Western Wayne from access to a witness that could potentially salvage the Turpins' Title IX claim. Therefore, the Court will not consider Troy Davis' affidavit for the purposes of summary judgment.

The Turpins also point to the affidavit of another late appearing witness, Scott Allen, whose testimony supports the gender stereotype based discrimination theory of the case. Pls.' Ex. 5 ¶ 7. Allen, however, refers to the abuse as "gay bashing," and his testimony alone is not enough to create a triable issue of fact on the motivations of JT's abusers. *See* Pls.' Ex. 5 ¶ 2.

The Turpins also argue that their deposition testimony concerning the cause of the abuse JT suffered should be stricken for lack of personal knowledge. Although the Turpins could not possibly know what exactly was in the minds of JT's abusers, they were reasonably situated to form an inference as to the cause of JT's abuse. Not only were they exposed to the narrative surrounding the abuse through their son, they spent quite a bit of time at the school and they frequently spoke with the administration concerning the abuse.

In other words, their inferences as to the cause of the abuse were "grounded in observation or other first-hand personal experience." *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). Regardless, the Turpins ask this Court to accept their affidavits stating their new position on exactly the same issue while striking their deposition testimony. The Turpins cannot have it both ways. If their deposition testimony must be stricken for lack of personal knowledge, surely their affidavits must be so stricken.

At such a late date, the Turpins cannot salvage their claim from summary judgment by filing self serving affidavits and deposition errata sheets. *See Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1171-1172 (7th Cir. 1996). A party can avoid summary judgment with a statement that contradicts an earlier sworn statement only where it clarifies ambiguous or confusing testimony or where it is based on newly discovered evidence. *Id.* Neither of those exceptions applies to this situation. The Turpins have put forth no new evidence to support their shift in theory, and they clearly and consistently stated in their Compliant, their answers to interrogatories, and their depositions that they believed JT was harassed because of his perceived sexual orientation. *See Hamm*, 332 F.3d at 1062. Therefore, Western Wayne's Motion for Summary Judgment on the Turpins' Title IX claim is **GRANTED**.

### B. THE TURPIN'S § 1983 CLAIMS

The Turpins assert two § 1983 claims predicated on Western Wayne's alleged violations of the Fourteenth Amendment. First, the Turpins make a failure to protect claim based on the Due Process Clause of the Fourteenth Amendment. In addition, the Turpins

claim that the sexual harassment JT suffered was caused by an unconstitutional policy or custom based on the Equal Protection Clause of the Fourteenth Amendment. Under 42 U.S.C. § 1983, the Turpins need to show that Western Wayne deprived JT of a right secured by the Constitution and that Western Wayne acted under color of state law. *Waubanascum v. Shawano County*, 416 F.3d 658, 665 (7th Cir. 2005). The parties do not dispute that Western Wayne acted under color of state law. The Court will address each alleged Constitutional violation in turn.

Western Wayne alleges, citing *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989), that the Due Process Clause of the Fourteenth Amendment does not impose a duty on the state to protect individuals from harm by private actors. Generally that is true; however, the Turpins submit their claim fits into the "state-created danger" exception to the general rule of *DeShaney*. The courts of appeals have inferred from *DeShaney* that the substantive component of the Due Process Clause imposes a duty upon the state to protect individuals from dangers created by the state itself. *See King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007). The state-created danger doctrine provides three elements that must be proven in order for it to apply. *Id.* First, "in order for the Due Process Clause to impose upon a state the duty to protect its citizens, the state, by its affirmative acts, must create or increase a danger faced by an individual." *Id.* at 818. Second, "the failure on the part of the state to protect an individual from such danger must be the proximate cause of the injury to the individual." *Id.* "Third, because the right to protection against state-created dangers is derived from the substantive component of the Due Process Clause, the state's failure to protect the

9

individual must shock the conscience." The Turpins allege that the school's failure to protect JT falls into the ambit of the state-created danger exception.

The Turpins' claim fails under the first prong of the doctrine. In their brief in response to Western Wayne's motion, the Turpins conclusorily state that Western Wayne's alleged failure to monitor the freshman hallway despite its promise to do so, and a teacher's failure to break up a fight where JT was allegedly targeted despite alleged notice, fulfill each of the prongs of the state-created danger exception. The Turpins point to no evidence to suggest that Western Wayne's failure to keep its promise or intervene in the argument were affirmative acts that created or increased the danger JT faced at school. "[T]he key question in determining whether state behavior violated the victim's constitutional rights is: 'What actions did [the state actor] affirmatively take, and what dangers would [the victim] other wise have faced?'" *Windle v. City of Marion*, 321 F.3d 658, 661 (7th Cir. 2003). Even if the Court construes Western Wayne's alleged broken promise to monitor the hallway as an affirmative action, the Turpins point to no evidence that the action created or increased the danger that JT faced. He was harassed in the hallways before the school intervened, and the Turpins point to nothing in the record to indicate that the harassment changed in nature or severity due to Western Wayne's alleged failure to monitor. Additionally, the teacher's failure to intervene in the fight is not an affirmative action. *See id.* (finding that even where police officers had actual notice of an improper sexual relationship between a teacher and an underage student, the police officers' failure to intervene was not affirmative action). However, even if the Court did construe the teacher's failure to intervene as an affirmative act, the Turpins point to no evidence to indicate that JT was subjected to more or different abuse than he already was subject to

prior to the teacher's decision not to act. In the case at bar, Western Wayne neither created the danger JT faced nor did it do anything to make what JT already faced worse. Therefore, the state-created danger exception to *DeShaney* cannot apply. *See id.*

In support of their claim that Western Wayne should be held liable for its failure to protect, the Turpins cite a very recent case where the Seventh Circuit found that for the purpose of qualified immunity it was clearly established that a school principal violated a student's Constitutional rights if the principal "created a risk of harm or exacerbated an existing one" by covering up a band teacher's sexual abuse of female students by misleading the girls' parents, the superintendent, and other administrators. *T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010) (relying on *Stoneking v. Bradford Area Sch. Dist.*, 856 F.2d 594, 599 (3d Cir. 1988)). However, Grindle is distinguishable from the case at bar because JT's injuries were caused by private actors, but the injuries in *Grindle* were caused by the band conductor, a state employee. *Grindle*, 533 F.3d at 586-87; *see also Stoneking*, 882 F.2d at 724 (distinguishing from *DeShaney* by noting that the injuries in *DeShaney* were caused by private actors not state employees). Therefore, as to the Turpins' § 1983 claim premised on Western Wayne's alleged failure to protect JT, Western Wayne's Motion for Summary Judgment is **GRANTED**.

The Turpins' final theory of recovery is premised on JT's rights under the Equal Protection Clause of the Fourteenth Amendment. In order to establish liability against Western Wayne, the Turpins must show that Western Wayne's alleged discrimination against him based on sexual orientation was caused by an unconstitutional policy, custom, or practice. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). Because the Turpin's failure to protect claim is barred by *DeShaney*, sexual orientation discrimination

11

is the only possible basis the Turpins could have to allege Western Wayne's *Monell* liability. The Turpins appear to premise their *Monell* liability claim on their failure to protect theory. They do not point to any evidence in the record that would tend to show that JT suffered sexual orientation discrimination as a result of any unconstitutional policy, custom or practice of Western Wayne. Therefore, Western Wayne's Motion for Summary Judgment as to the Turpin's Equal Protection claim is **GRANTED**.

### C. THE TURPIN'S STATE LAW CLAIMS

Western Wayne requests that the Court retain jurisdiction over the Turpins' state law negligence claim against Western Wayne for the purposes of the trial set in August. Once all the federal claims in a case have been dismissed, a district court may relinquish supplemental jurisdiction but it does not have to unless the "federal claims are frivolous and so do not engage the jurisdiction of the federal courts." *See Doe-2*, 593 F.3d at 513. Generally, however, where all the federal claims are dismissed before trial there is a presumption that the district court should relinquish jurisdiction over the state law claims. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). In light of the presumption and the fact that all the federal claims in this case were disposed of on Western Wayne's Motion for Summary Judgment, the Court declines Western Wayne's request to retain jurisdiction over the Turpins' state law claims. Therefore, the Turpins' state law negligence claim is **DISMISSED without PREJUDICE**.

## IV. CONCLUSION

For the foregoing reasons, the defendant's, Western Wayne School Corporation, Motion for Partial Summary Judgment is **GRANTED**, and the plaintiffs', Jon Brent Turpin and Linda Becker Turpin, state law claim against Western Wayne is **DISMISSED without PREJUDICE**.

In addition, the Court notes that the defendants, Amy S. Good and John Doe, remain active on the Court's docket in this matter. The Court hereby **ORDERS** the plaintiffs, Jon Brent Turpin and Linda Becker Turpin, to **SHOW CAUSE** within fourteen days why their claims against Amy S. Good and John Doe should not be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

IT IS SO ORDERED this 24th day of June, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

J. Brian Tracey
GEVERS, TRACEY & SKEENS
bndtracey@mac.com

Thomas E. Wheeler II
FROST BROWN TODD LLC
twheeler@fbtlaw.com